UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ETIENNE JACKSON,

          Plaintiff,

          v.

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, PATRICK RYDER,
INSPECTOR MASSARO, PHILIP LAGRASTA,
THOMAS GOODRICH, MICHAEL R. ECHAVARRIA,
ANDREW V. KELLY, JAMES CAVAN,
JOHN DOES 1-3,

          Defendants.

---

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

The plaintiff, ETIENNE JACKSON, by and through his attorneys, Lebedin Kofman LLP,

complain and allege of the defendants as follows:

## INTRODUCTION

1.      Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for the deprivation by defendants, acting under color of law, of rights guaranteed to him under the United States constitution and federal and state laws. Defendants deprived the plaintiff of these guaranteed rights when they unlawfully seized, arrested, and prosecuted Plaintiff for a crime he did not commit.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 because it is brought to seek relief and/or damages for the deprivation under color of state law of rights guaranteed by the constitution of the United States and federal law.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in it.

### NOTICE OF CLAIM FOR STATE LAW CLAIMS

4.  Plaintiff filed a notice of claim against the County of Nassau and the Nassau County Police Department in accordance with New York General Municipal Law on April 19, 2025, and another notice of claim on June 5, 2025 after the underlying criminal case was dismissed, both of which set forth plaintiff's name and address, his attorneys, the nature of the claim, the time and place where it occurred, and the items of damages. A 50h hearing was held on July 1, 2025.

5.    At least 30 days has passed since service of the notices of claim and defendants have refused payment.

6.    This action is being commenced within one year and 90 days of accrual.

### PARTIES

7.    Plaintiff ETIENNE JACKSON is a citizen of the United States and resided in Queens County, New York at all relevant times.

8.    At all relevant times, defendant COUNTY OF NASSAU (County) was a municipal corporation incorporated and existing under the laws of the State of New York, which operated, controlled, and managed defendant Nassau County Police Department. Its principal place of business is One West Street, Mineola, New York 11501.

9.    At all relevant times, defendant NASSAU COUNTY POLICE DEPARTMENT (NCPD) was and is an agency of defendant County, and directly supervised the individual defendants, with its principal place of business being 1490 Franklin Avenue, Mineola, New York 11501.

10.    At all relevant times, defendant PATRICK RYDER was the commissioner of police for the Nassau County Police Department, with his principal place of business being 1490 Franklin Avenue, Mineola, New York 11501. Upon information and belief, as commissioner, this defendant was in charge of and responsible for the overall management, operation, and supervision of the police department. Claims against this defendant are asserted in his individual capacity.

11.    At all relevant times, INSPECTOR MASSARO was the commanding officer of the Nassau County Police Department's 3rd Precinct with his principal place of business being 214 Hillside Avenue, Williston Park, New York 11596. Upon information and belief, this defendant was responsible for the overall management, operation, and supervision of this precinct. Claims against this defendant are asserted in his individual capacity.

12.    At all relevant times, PHILIP LAGRASTA was a sergeant with the Nassau County Police Department, with his principal place of business being the 3rd Precinct, 214 Hillside Avenue, Williston Park, New York 11596. This defendant approved the criminal complaint and other paperwork for the underlying criminal case. Plaintiff does not yet know the rest of his role in the case, if any. Claims against this defendant are asserted in his individual capacity.

13.    At all relevant times, THOMAS GOODRICH, shield 1504, was a detective with the Nassau County Police Department, with his principal place of business being the 3rd Precinct, 214 Hillside Avenue, Williston Park, New York 11596. This defendant was an arresting officer and the main detective on the underlying criminal case and upon information and belief, he

participated in the decision to arrest, charge, and prosecute plaintiff. Claims against this defendant are asserted in his individual capacity.

14.     At all relevant times, MICHAEL R. ECHAVARRIA was a detective with the Nassau County Police Department, with his principal place of business being the 3rd Precinct, 214 Hillside Avenue, Williston Park, New York 11596. This defendant was an arresting officer and a detective on the underlying criminal case and upon information and belief, he participated in the decision to arrest, charge, and prosecute plaintiff. Claims against this defendant are asserted in his individual capacity.

15.     At all relevant times, ANDREW V. KELLY was a detective with the Nassau County Police Department, with his principal place of business being the 3rd Precinct, 214 Hillside Avenue, Williston Park, New York 11596. This defendant was an assisting detective on the underlying criminal case and upon information and belief, he participated in the decision to arrest and/or charge and/or prosecute plaintiff. Claims against this defendant are asserted in his individual capacity.

16.     At all relevant times, JAMES CAVAN was a police officer with the Nassau County Police Department, with his principal place of business being the 3rd Precinct, 214 Hillside Avenue, Williston Park, New York 11596. Upon information and belief, this defendant was on the scene of plaintiff's arrest, and he booked and searched plaintiff. Plaintiff does not yet know the rest of his role in the case, if any. Claims against this defendant are asserted in his individual capacity.

17.     At all relevant times, defendants JOHN DOES 1-3 were police officers with the Nassau County Police Department, and believed to be from the 3rd Precinct with their principal

place of business being the 3rd Precinct, 214 Hillside Avenue, Williston Park, New York 11596. The identities of these defendants are not known but they are believed to be involved in Plaintiff's arrest, charge, and prosecution. Claims against these defendants are asserted in their individual capacities.

18.     At all relevant times, the individual defendants acted in the scope of their authority as public servants for the County of Nassau and the Nassau County Police Department, and under color of law, to wit, under the color of the constitution, statutes, laws, rules, regulations, ordinances, charters, customs, policies, and usages of the State of New York and Nassau County.

### FACTS

19.     At about 7:30 PM on March 1, 2025, the Plaintiff, Etienne Jackson, who worked as a Lyft driver, accepted a nearby ride request.

20.     Six other drivers were offered the fare before it got to Mr. Jackson.

21.     The order came through the Lyft app as normal from a registered customer, James Hood, to pick up a passenger in Westbury and drive them to New Jersey.

22.     But when Mr. Jackson arrived at the pickup location, no one came out, so he tried contacting James.

23.     Then Mr. Jackson saw a woman come outside and stand by her front door. He presumed she was the passenger so he got out to confirm.

24.     But before he could do so, two defendants, who he later learned were plainclothes police officers, rushed him and handcuffed him. These defendants are believed to be Detectives Thomas Goodrich and either Michael Echavarria or Andrew Kelly.

25.     Mr. Jackson was totally confused but the police would not tell him what was happening or why they handcuffed him. They just kept insisting that he was there for a package.

26.     Mr. Jackson repeatedly told them he was to pick up a Lyft customer and he kept asking to show them his phone, which would confirm it.

27.     Defendants, including, upon information and belief, Goodrich, Echavarria, Kelly, Cavan, and one or more of the John Does, ignored him and kept him sitting outside in the cold while they decided what to do.

28.     During this time, a defendant officer went through Mr. Jackson's phone to get the information, which confirmed everything Mr. Jackson had told them.

29.     Upon information and belief, this defendant also tried to call James from the defendant's own phone but Mr. Jackson is not sure whether he reached or talked to him.

30.     Mr. Jackson also heard at least one defendant on the phone with command or a supervisory officer discussing whether to arrest him (Mr. Jackson) or not.

31.     Despite the evidence that Mr. Jackson was just a Lyft driver who accepted a random, standard fare request from a registered customer through the normal channels; the evidence that he knew nothing about any scam or package pickup and had nothing to do with it; and defendants' own apparent doubts about his involvement, defendants arrested and charged Mr. Jackson with a felony, then caused his prosecution.

32.     Upon information and belief, defendants did not share with the district attorney the evidence that Mr. Jackson was not involved, nor their own apparent doubts about his involvement.

33.     Then defendants posted a news release with Mr. Jackson's photo, name, and arrest information on their Instagram page. As intended, other news media picked up and republished the story.

34.     Mr. Jackson has no criminal history and this was extremely embarrassing for him. Additionally, as further explained below, it has also had a negative financial impact on him.

35.     Mr. Jackson was held in custody for about 24 hours.

36.     His wrists were swollen and painful for about two days from the tight handcuffs.

37.     He attended about five court appearances before the charge(s) against him were dismissed on May 28, 2025.

38.     The arrest and prosecution took a mental and financial toll on Mr. Jackson, who has no criminal history, and in addition to being a hard worker and a student, he was also the sole breadwinner for his family.

39.     He missed two months of classes because he was so preoccupied and unable to focus.

40.     He also lost work and income while he was in custody and for a few days after. And even after he returned to work, he soon found himself increasingly frozen with fear, hypervigilant, and afraid to pick up customers, and he did not work again until about April 7.

41.     But that was also short-lived, and a couple of weeks later he again found himself unable to work or to function normally.

42.     When he returned to work on May 12, 2025 he was still unable to work at his prior capacity because he was still struggling with fear and apprehension.

43.     He lost significant income and fell behind on bills.

44.     Additionally, to date, the defendants have not removed the Instagram post, which has been shared or reposted about 25 times, and which continues to impact Mr. Jackson and his ability to earn money with extra contract work, as well as to grow professionally.

## CAUSES OF ACTION

## FEDERAL LAW CLAIMS

### FIRST CAUSE OF ACTION AGAINST LAGRASTA, GOODRICH, ECHAVARRIA, KELLY, CAVAN, JOHN DOES 1-3
### Violation of Constitutional Rights Under Color of State Law
### False Arrest

45.     Plaintiff incorporates by reference and realleges each and every allegation previously stated.

46.     As described above, these defendants arrested plaintiff or caused his arrest, without privilege or consent, and despite the lack of probable cause, and held him in custody for about 24 hours.

47.     This violated plaintiff's constitutional right to be free from unlawful arrests, and as a direct and proximate result of these actions and/or inactions, he has been injured.

### SECOND CAUSE OF ACTION AGAINST LAGRASTA, GOODRICH, ECHAVARRIA, KELLY, CAVAN, JOHN DOES 1-3
### Violation of Constitutional Rights Under Color of State Law
### Malicious Prosecution

48.     Plaintiff incorporates by reference and realleges each and every allegation previously stated.

49.     As described above, these defendants pushed ahead and caused plaintiff's prosecution, despite the lack of probable cause, and upon information and belief, they presented

information to the district attorney that either omitted the evidence that plaintiff did not commit

the crime(s), or that mislead the nature and strength of the evidence and information as it related

to plaintiff's culpability for the crime(s).

50.    This violated plaintiff's constitutional right to be free from malicious prosecution,

and as a direct and proximate result of these actions and/or inactions, he has been injured.

**THIRD CAUSE OF ACTION AGAINST LAGRASTA, GOODRICH, ECHAVARRIA, KELLY, CAVAN, JOHN DOES 1-3**
**Violation of Constitutional Rights Under Color of State Law**
**Violation of Right to Fair Trial**

51.    Plaintiff incorporates by reference and realleges each and every allegation

previously stated.

52.    As described, these defendants pushed ahead and caused plaintiff's prosecution,

despite the lack of probable cause, and upon information and belief, they presented information

to the district attorney that either omitted the evidence that plaintiff did not commit the crime(s),

or that mislead the nature and strength of the evidence and information as it related to plaintiff's

culpability for the crime(s).

53.    Plaintiff was consequently prosecuted before the charge(s) against him was

dropped.

54.    This violated plaintiff's right to a fair trial, and as a direct and proximate result of

these actions and/or inactions, he has been injured.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS COUNTY, NCPD, RYDER, MASSARO, LAGRASTA**
**Violation of Constitutional Rights Under Color of State Law**

**Implementation of Policies that Directly Violate Constitutional Rights/Failure to Implement Policies and Practices to Avoid Violations of Constitutional Rights and Failure to Train/Supervise Employees and Agents**

55.    Plaintiff incorporates by reference and realleges each and every allegation previously stated.

56. Upon information and belief, these defendants have failed to institute and implement appropriate policies at the police department on a variety of subjects including arrests, prosecutions, and other areas of importance to citizens' rights.

57. In the alternative, and upon information and belief, these defendants have instituted policies addressing these topics but through gross negligence have demonstrated deliberate indifference to citizens by failing or refusing to enforce them.

58. Upon information and belief, these defendants have also failed to adequately hire, screen, and supervise police officers and detectives, and to provide adequate training and supervision regarding their duties as they relate to citizens' rights.

59. As set forth above, the individual defendants seized, detained, arrested, and caused plaintiff's prosecution, despite the apparent lack of sufficient evidence and legal cause to do so.

60. Upon information and belief, there are about 2400 police officers in the NCPD.

61. The organization "Police Scorecard" found that in 2021 alone (the only year available in the report), there were 463 civilian complaints filed against NCPD officers for non-force misconduct. Of these, the NCPD's internal review system found for civilians just 13 percent of the time.

62. A 2022 report by WSHU public radio shows similar numbers. They found that from 2016 to 2021, there were 28 false arrest allegations against the NCPD.

63. This report also noted that despite the NCPD finding false arrest (as well as excessive force) complaints to be founded, court records over the same time frame of 2016-2021 show more than three dozen judgements against them for 41 allegations of false arrest (and excessive force). Seven of these cases were jury verdicts.

64. The false arrest cases include: Coleman v. County of Nassau (false arrest), Triolo v. Nassau County (false arrest), Fahlund v. County of Nassau (false arrest), Cohen v. Kreisberg (false arrest, excessive force), all in 2016; McParland v. County of Nassau (false arrest), Wallack v. Siar (false arrest, excessive force), Price v. Schneider (false arrest, excessive force), Williams v. Mangano (false arrest), Lutchman v. County of Nassau (false arrest, excessive force), Passero v. County of Nassau (false arrest, excessive force), Denis v. County of Nassau (false arrest), Alcantara v. Correale (false arrest, excessive force), Chmil v. County of Nassau (false arrest), Price v. Kenney (false arrest), all in 2017; Curry v. Nassau County First Precinct (false arrest, excessive force), Jackson v. Nassau County (false arrest), Sterling v. Albergo (false arrest), Justo v. Nassau County (false arrest, excessive force), Justo v. County of Nassau (false arrest), Smith v. County of Nassau (false arrest), all in 2018; Gildea v. County of Nassau (false arrest), Hardy v. County of Nassau (false arrest, excessive force), Cardoza v. County of Nassau (false arrest, excessive force), Merolla v. County of Nassau (false arrest), Jenkins v. County of Nassau (false arrest, excessive force), all in 2019; Parrino v. County of Nassau (false arrest) in 2020.

65. Despite the successful litigation outcomes, internal affairs did not find a single of the allegations to be founded.

66. There are also more recent media reports of other cases of false arrest and other violations against NCPD officers.

67. For example, Tyrone Phifer sued the NCPD in 2024 for false arrest and racial discrimination after police arrested him despite evidence that he was not the suspect, then the police tried to cover their misconduct.

68. Another man, John Batrolotti, also sued the NCPD recently (2:26-cv-00421) for false arrest, malicious prosecution, and other civil rights violations, after officers ignored evidence that he committed no crime and arrested him and caused his prosecution anyway.

69. And a jury awarded a nearly $3 million jury verdict to plaintiff Brian Pfail in 2025 after finding that NCPD officers subjected him to excessive force, malicious prosecution, and abuse of process.

70. All of this is consistent with a 2021 NYCLU report showing 1605 complaints and 2601 allegations filed against NCPD officers between January 2012 and May 2015, including 42 percent for unprofessional conduct and 31 percent for improper tactics/procedures. The rest of the allegations (8 percent) were for excessive force.

71. However, the NCPD only founded 7 percent of the total allegations.

72. The violations against plaintiff here occurred in accordance with this culture, and with practices, policies, and customs in the NCPD where officers violate the law and very, very few are ever disciplined at all.

73. The violations against plaintiffs also occurred through these defendants' failures to act on information indicating violations were occurring, and through their gross negligence in supervising subordinates, including the individual defendants here.

74. As a direct and proximate result of these actions and/or inactions, plaintiff has been injured.

## STATE LAW CLAIMS

### FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### False Arrest

75. Plaintiff incorporates by reference and realleges each and every allegation previously stated.

76. As described above, these defendants arrested plaintiff or caused his arrest, without privilege or consent, and despite the lack of probable cause, and held him in custody for about 24 hours.

77. Defendants County and NCPD are responsible and liable for the acts of their employees and agents, including the individual defendants here, which were done within the scope of their employment under the doctrine of *respondeat superior*.

78. As a direct and proximate result of these actions and/or inactions, plaintiff has been injured.

### SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### Malicious Prosecution

79. Plaintiff incorporates by reference and realleges each and every allegation previously stated.

80. As described above, these defendants pushed ahead and caused plaintiff's prosecution, despite the lack of probable cause, and upon information and belief, they presented information to the district attorney that either omitted the evidence that plaintiff did not commit the crime(s), or that mislead the nature and strength of the evidence and information as it related to plaintiff's culpability for the crime(s).

81. Defendants County and NCPD are responsible and liable for the acts of their employees and agents, including the individual defendants here, which were done within the scope of their employment under the doctrine of *respondeat superior*.

82. As a direct and proximate result of these actions and/or inactions, plaintiff has been injured.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Publishing Mugshot Photo

83. Plaintiff incorporates by reference and realleges each and every allegation previously stated.

84. As described above, defendants posted a news release with Mr. Jackson's photo, name, personal information, and arrest information on their Instagram page. As intended, other news media picked up and republished the story.

85. There was no legitimate reason to post this, and there is certainly no legitimate reason for defendants to not have removed the post once the charge(s) against plaintiff were dismissed. Plaintiff has been financially and otherwise harmed by the post.

86. Defendants County and NCPD are responsible and liable for the acts of their employees and agents, including the individual defendants here, which were done within the scope of their employment under the doctrine of *respondeat superior*.

87. As a direct and proximate result of these actions and/or inactions, plaintiff has been injured.

## EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS COUNTY, NCPD, RYDER, MASSARO, LAGRASTA
### Negligent Hiring, Training, Retention, And Supervision

88. Plaintiff incorporates by reference and realleges each and every allegation previously stated.

89.     These defendants failed to exercise reasonable care in hiring, training, retaining, and supervising their employees and agents, including the individual defendants here, thereby breaching their duty to plaintiff as well as to the public.

90.     As set forth above, the NCPD has a history of claims of false arrest and other constitutional and legal violations but it almost never determines anything to be founded, despite dozens of successful lawsuits saying otherwise.

91.     These defendants were or should have been aware of the propensity of their subordinates to commit negligent or injurious acts, especially given their apparent lack of training or knowledge of, or regard for basic constitutional rights of citizens.

92.     These defendants are responsible and liable for the acts of their employees and agents, including the individual defendants here, which were done within the scope of their employment under the doctrine of *respondeat superior*.

93.     As a direct and proximate result of these actions and/or inactions, plaintiff has been injured.

## DEMAND FOR PUNITIVE DAMAGES

94.     The actions and inactions of the individual defendants as described were extreme, outrageous, and shock the conscience of a reasonable person and an award of punitive damages is appropriate.

95.     Punitive damages are not sought from the municipal defendants.

## DEMAND FOR TRIAL BY JURY

96. The plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff requests that this Honorable Court grant him the following

relief:

A.  A judgment in favor of plaintiff against all defendants for compensatory damages in

   an amount to be determined by a properly charged jury;

B.  A judgment in favor of plaintiff against all individual defendants for punitive

   damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorney's fees and the costs of this action pursuant to 42 USC

   § 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.


Dated:   May 28, 2026                                   Respectfully submitted by:
         Orange County, New York

                                                        **s/ Jessica Gorman**
                                                        Jessica M. Gorman
                                                        Lebedin Kofman, LLP
                                                        300 Merrick Road, Suite 403
                                                        Lynbrook, New York 11563
                                                        T: (212) 500-3273
                                                        E: jgorman@lebedinkofmanlaw.com

                                                        **ATTORNEYS FOR PLAINTIFF**